NAVAJO NATION, Plaintiff–Appellant,

v.

James W. Norris; Gayle Norris, Defendants–Appellees,

v.

CONFEDERATED TRIBES AND BANDS OF THE YAKAMA INDIAN NATION, Plaintiff–Intervenor.

Navajo Nation, Plaintiff,

v.

James W. Norris; Gayle Norris, Defendants–Appellees,

v.

Confederated Tribes and Bands of the Yakama Indian Nation, Plaintiff–Intervenor–Appellant.

Nos. 01–35039, 01–35041.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2002.

Filed June 9, 2003.

Craig J. Dorsay, Portland, Oregon, for plaintiff-appellant Navajo Nation.

Mary T. Wynne (briefed), Okanogan, Washington, and Craig J. Dorsay (argued), Portland, Oregon, for plaintiff-intervenor-appellant Confederated Tribes and Bands of the Yakama Indian Nation.

Todd W. Rosencrans, Perkins Coie LLP, Seattle, Washington, for defendants-appellees James W. Norris and Gayle Norris.

Before: REAVLEY,* TASHIMA, and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge:

The Navajo and Yakama Nations and Confederated Tribes ("Nations") appeal the district court's summary judgment in favor of James and Gayle Norris ("the Norrises"), rejecting Nations' challenge to the validity of the Norrises' adoption of K.H., an Indian child. Nations also assert error due to the district court's denial of Nations' motions to compel additional discovery and to reconsider its ruling.

At oral argument, the parties agreed that resolution of this case hinges on whether the district court clearly erred in determining the domicile of K.H. under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq. Because the parties elected not to delve into the thorny issue of whether Nations or the maternal grandparents were entitled to notice in the case of a voluntary relinquishment, neither will we. *See United States v. Mariscal,* 285 F.3d 1127, 1129 n. 2 (9th Cir.2002). Because we agree with the district court's determination that the state court had jurisdiction over the adoption proceedings, we AFFIRM.

## I.

### *Background*

David Becenti, K.H.'s birth father, is a full-blood Navajo and an enrolled member of the Navajo Nation. Theodora Becenti, K.H.'s birth mother, is one-half Navajo and one-half Yakama, and an enrolled member of the Yakama Nation.

From the time of their marriage in late 1987 until late 1990, the Becentis resided on either the Navajo or Yakama Reservation. On November 10, 1990, the Becentis moved into an apartment in the City of Yakima, outside the boundaries of either reservation. While living in the off-reservation apartment, the Becentis indicated in some non-adoption related documents that they lived off the reservation, while in others they indicated they lived on the reservation.

Sometime between November 10 and November 15, 1990, Theodora informed her husband that she was pregnant with K.H. Theodora broached the subject of adoption with her husband, and they met with an adoption attorney sometime before November 15.[1] Prior to meeting with the adoption attorney, the Becentis were unaware of the existence of ICWA.

K.H. was born on December 7, 1990. The next day, the Becentis transferred physical custody of K.H. to the Norrises. On December 11, 1990, the Becentis executed a Petition for Relinquishment, Termination of Parent/Child Relationship, and Approval of Voluntary Relinquishment, Consent and Waiver. The petition contained an objection to the application of ICWA and to tribal court jurisdiction.

On December 17, 1990, the Becentis executed additional relinquishment documents at the office of their attorney.[2] In these documents, the Becentis declared under penalty of perjury that they resided at the off-reservation apartment at the time of K.H.'s birth, and intended to continue their residence there indefinitely.

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The adoption attorney also represented the Norrises.

2. At this point, the Becentis were represented by a different attorney, who had no connection to the Norrises.

The parties filed cross-motions for summary judgment on the issue of whether the Becentis had sufficiently established domicile outside the reservation at the time of K.H.'s birth. Following review of the submitted documents, the district court granted summary judgment in favor of the Norrises. The district court denied Nations' motions for reconsideration and to compel the production of documents.

## II.

### *Discussion*

#### A. Standard of Review

We review a district court's grant of summary judgment *de novo. Coszalter v. City of Salem,* 320 F.3d. 968, 973 (9th Cir.2003). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, genuine issues of material fact remain for trial, and whether the district court correctly applied relevant substantive law. *Id.*

 Against this backdrop, we consider the district court's review of the state court's finding that the Becentis were domiciled off-reservation when K.H. was born. However, we must keep in mind that the district court's summary judgment ruling was shaped by the nature of the proceeding under review. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 833–34 (9th Cir.2002) (reviewing the district court's entry of summary judgment "on the basis of laches" while also considering the abuse of discretion or clear error standard of review). In this case, the district court was reviewing a finding of domicile made by the state court, a matter subject to clear error review. *See Lowenschuss v. Selnick,* 171 F.3d 673, 684 (9th Cir.1999).

#### B. Procedural Posture

The parties submitted a set of agreed upon facts to the court. Among other facts, the parties agreed that:

1. The Becentis' motivation for moving to the off-reservation was in part to assert their independence;

2. Another motivation for the Becentis' move was proximity to their respective jobs and the community college;

3. The Becentis did not change the address listed on their drivers' licenses to reflect the off-reservation residence;

4. The Becentis did not change their voter registration to a precinct located off the reservation;

5. The Becentis did not change the addresses on their credit cards or bank account;

6. Theodora completed a new IRS W–4 form for her employer, listing the off-reservation address;

7. The Becentis received mail at both the reservation address and the off-reservation address;

8. At the time of K.H.'s birth, Indian Health Service records and insurance forms listed the off-reservation address for the Becentis;
 and

9. K.H.'s social security card was mailed to the off-reservation address.

Presented with the facts detailed above and in the Background section of this opinion, the state court determined that the Becentis were domiciled outside the confines of the reservation, and approved the adoption of K.H. by the Norrises. The district court was called upon, in the context of the summary judgment motion, to determine if the state court's ruling was clearly erroneous. *See Jarrow Formulas, Inc.,* 304 F.3d at 833–34.

#### C. Application of ICWA

ICWA was enacted "to protect the best interests of Indian children and to promote

the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes...." H.R. Rep. 95–1386, 1978 U.S.C.C.A.N. 7530 (July 24, 1978).

■■■ ICWA confers exclusive jurisdiction upon tribal courts over an Indian child who is domiciled on a reservation. *See* 25 U.S.C. § 1911. An Indian child who is not domiciled on a reservation is subject to the concurrent jurisdiction of tribal court and state court. *See id.*[3]

It is undisputed that the Becentis voluntarily consented to termination of their parental rights and to K.H.'s adoption. However, whether the Becentis were domiciled outside the reservation at the time of that consent was hotly disputed, since the Becentis' domicile was K.H.'s domicile and therefore determinative of the state court's jurisdiction. If the Becentis' domicile was determined to be on the reservation, the state court had no concurrent jurisdiction to approve the adoption of an Indian child, rendering the adoption void. *See* 25 U.S.C. § 1911; *see also Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).

In resolving the issue of domicile, the state court adjudication relied upon findings that: 1) the Becentis had moved off the reservation "approximately two months before[K.H.] was born"; 2) the Becentis voluntarily relinquished their parental rights; 3) the Becentis objected to transfer of the proceedings to tribal court and application of ICWA; and 4) the Becentis expressed a desire "to remain anonymous as to their Indian heritage."

■■■ The district court referred to the state court's findings when entering judgment in favor of the Norrises. In response to Nations' argument that the Becentis maintained the reservation address for some purposes, the district court noted the immateriality of those acts. The district court observed that "couples establishing a new residence often take these [change of-address] steps only as they may become actually necessary and, therefore priorities." The district court stressed that the Becentis took the change-of-address "steps immediately necessary when establishing a new residency and when facing a health care issue like the birth of a child." The district court also considered the legal documents executed by the Becentis memorializing their intent to remain in the City of Yakima indefinitely and expressly rejecting application of ICWA and involvement of the tribal court. The district court's agreement with the state court's finding that the Becentis were domiciled off-reservation was consistent with applicable law. *See Lowenschuss v. Selnick,* 171 F.3d at 684 (evaluating a party's actions to determine the party's domiciliary intent). The district court entered summary judgment in favor of defendants on the basis that the state court had jurisdiction over K.H.'s adoption by virtue of the Becentis' off-reservation domicile. Nations raised no material issue of fact sufficient to suggest that the state court's finding of domicile was clearly erroneous. Accordingly, the district court's entry of summary judgment was proper. *See King Jewelry, Inc. v. Fed. Express Corp.,* 316 F.3d 961, 963–64 (9th Cir.2003).

### D. Navajo Nation's Discovery Motion

Navajo Nation filed a motion to compel discovery of material in the possession of

---

**3.** A parent may also voluntarily consent to termination of parental rights as a prelude to adoption. *See* 25 U.S.C. § 1913.

the Becentis' initial adoption attorney, who also represented the Norrises. The defendants objected to the requested discovery on the bases of attorney-client and attorney work-product privileges. The district court did not rule on the motion to compel discovery, concluding that the matter was moot once the adoption attorney was dismissed as a defendant. Consequently, we consider anew the merits of the motion to compel.

 A party is not entitled to discovery of information protected by the attorney-client privilege. *See Wharton v. Calderon*, 127 F.3d 1201, 1205 (9th Cir.1997). A party is entitled to discovery of attorney work-product only if the requesting party demonstrates that the requested information was not available from any other source. *See Holmgren v. State Farm Mutual Automobile Ins. Co.*, 976 F.2d 573, 576 (9th Cir.1992). Navajo Nation sought discovery of evidence to challenge the attorney's and the Becentis' declarations regarding the timing of the initial contact between the attorney and the Becentis. However, this information was readily obtainable from the Becentis. Therefore, since Navajo Nation could not have met the prerequisite to obtain the discovery that was the subject of the motion to compel, the lack of a ruling on Navajo Nation's motion does not warrant reversal. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.2002).

### E. The District Court's Denial of Nations' Motion for Reconsideration

 Reconsideration is indicated in the face of the existence of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice. *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178–79 (9th Cir.1998). Whether or not to grant reconsideration is

committed to the sound discretion of the court. *See Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.2000).

 Navajo Nation's motion for reconsideration does not meet any of the specified criteria. Rather, the motion addresses the custodial rights of the maternal grandparents, a matter the parties subordinated to the state court's determination of domicile. Considering the procedural flow of this case, the district court's denial of Nations' motion for reconsideration was a proper exercise of its discretion. *See Mustafa*, 157 F.3d at 1178–79.

### III.

### *Conclusion*

No material issue of fact was raised by Nations regarding the jurisdiction of the state court to finalize the adoption at issue in this case. The state court considered the provisions of ICWA and made a reasoned determination that the Becentis' off-reservation domicile conferred concurrent jurisdiction upon the state court. No material issue of fact was raised sufficient to support a finding that the state court's determination was clearly erroneous. Therefore, the district court's entry of summary judgment in favor of the Defendants was appropriate and in accordance with applicable substantive law.

We are not unmindful of the concerns underlying the enactment of ICWA. However, in this case, the birth parents were domiciled off-reservation and voluntarily repudiated application of ICWA and tribal court jurisdiction. Under these circumstances, the district court's entry of summary judgment did no harm to the dictates embodied in ICWA.

AFFIRMED.